## WILLIAMS v O'CONNOR

Docket No. 47369. Submitted October 15, 1980, at Lansing.—Decided August 18, 1981. Leave to appeal applied for.

Anna R. Williams, as administratrix of the estate of Gerald L. Williams, deceased, brought an action for medical malpractice against James A. O'Connor, D.O., R. R. Cornwell, D.O., Jackson Osteopathic Hospital, and Jackson Osteopathic Hospital Radiology Department. Defendants moved for accelerated judgment on the ground that the court lacked subject matter jurisdiction because plaintiff's decedent had entered into certain arbitration agreements. Jackson Circuit Court, James G. Fleming, J., granted defendants' motion. Plaintiff appeals, alleging that the arbitration agreements are violative of due process. *Held:*

The provision in the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975 (MAA) requiring one member of an arbitration panel convened pursuant to an arbitration agreement consistent with the act to be a hospital administrator or a physician does not violate a patient's due process rights.

Affirmed.

T. M. BURNS, J., dissented. He would hold that the specification in the MAA of the arbitration procedure and the composition of the arbitration panel provides a sufficient nexus with the state to constitute state action, thus making an arbitration agreement entered into pursuant to the act subject to challenge on due process grounds. He would hold further that a patient who is unaware that a physician is required to be a member of an arbitration panel cannot make a valid waiver of his right to trial by entering into an arbitration agreement which so provides and that, in addition, because a physician member of a medical malpractice arbitration panel has a direct pecuniary

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4, 7] 5 Am Jur 2d, Arbitration and Award §§ 8, 9.
   61 Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 374, 376.
   Arbitration of medical malpractice claim. 84 ALR3d 375.
[3] 16A Am Jur 2d, Constitutional Law §§ 855, 857.
[4] 16 Am Jur 2d, Constitutional Law § 205.
[5] 16 Am Jur 2d, Constitutional Law § 205.
[6] 46 Am Jur 2d, Judges § 94 *et seq.*

interest in the amount of any arbitration award which is neither remote nor insubstantial, the requirement is violative of due process. He would reverse and remand.

OPINION OF THE COURT

1. ARBITRATION — MEDICAL MALPRACTICE — ARBITRATION PANELS — DUE PROCESS — STATUTES.

The provision in the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975 which requires that one member of the three-member arbitration panel specified in the act be a hospital administrator or a physician does not violate a patient's due process rights (MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.).*

DISSENT BY T. M. BURNS, J.

2. ARBITRATION — MEDICAL MALPRACTICE — DUE PROCESS — STATE ACTION — STATUTES.

*An arbitration agreement entered into pursuant to the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975 may be challenged on due process grounds; the arbitration procedure and the composition of the arbitration panel which functions in a judicial capacity as an alternative to trial are established by a statute, providing a sufficient nexus with the state to constitute state action (MCL 500.3053[1], 600.5040 et seq.; MSA 24.13053[1], 27A.5040 et seq.).*

3. CONSTITUTIONAL LAW — DUE PROCESS — FAIR TRIAL.

*A person's right of access to a fair and impartial tribunal is within the penumbra of interests protected by the Due Process Clause (US Const, Am XIV).*

4. ARBITRATION — MEDICAL MALPRACTICE — VOLUNTARY AGREEMENTS — STATUTES.

*A patient's decision to agree to submit a dispute arising out of health care provided by a hospital to arbitration pursuant to the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975, thereby waiving his constitutional right to trial, is distinctly voluntary (MCL 600.5042; MSA 27A.5042).*

5. CONSTITUTIONAL LAW — WAIVER — APPEAL.

*A waiver of a constitutional right, to be effective, must be informed, intentional, and voluntary; an acknowledgement of a receipt of material which explains the results of a waiver is insufficient absent evidence that the material was read and understood prior to the waiver, and, on appeal, such understanding will not be presumed.*

6. JUDGES — DISQUALIFICATION OF JUDGES — DUE PROCESS.

*A judge or decision maker in a case may be disqualified on due process grounds where he (1) has a pecuniary interest in the outcome of the dispute, (2) has been a target of personal abuse or criticism from a party to the dispute, (3) is enmeshed in other matters involving one of the parties, or (4) might have prejudged the case because of prior participation therein as an accuser, investigator, factfinder, or initial decision maker.*

7. ARBITRATION — MEDICAL MALPRACTICE — DUE PROCESS — STATUTES.

*A physician-member of a medical malpractice arbitration panel has a direct pecuniary interest in the amount of any award which is neither remote nor insubstantial; thus, that provision of the R. Hood-McNeely-Geake Malpractice Arbitration Act of 1975 which requires one member of an arbitration panel to be a physician violates due process (MCL 600.5040 et seq.; MSA 27A.5040 et seq.).*

*Lopatin, Miller, Bindes, Freedman, Bluestone, Erlich & Rosen (by Steven G. Silverman),* for plaintiff.

*Foster, Swift, Collins & Coey, P.C. (by David H. Aldrich),* for defendant O'Connor.

*Stanton, Bullen, Nelson, Moilanen & Klaasen, P.C. (by Charles A. Nelson and William J. Braaksma),* for defendant Cornwell.

*Best, Arnold, Gleeson & Best, P.C. (by Dennis L. Viglione),* for defendant hospital.

Before: M. F. CAVANAGH, P.J., and T. M. BURNS and R. H. CAMPBELL,* JJ.

M. F. CAVANAGH, P.J. We adopt the facts of this case as they are presented by our brother BURNS in his dissent.

There is a difference of opinion among judges of the Court of Appeals as to whether the require-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ment of the R. Hood-McNeely-Geake Malpractice
Arbitration Act (MAA), MCL 600.5040 *et seq.;*
MSA 27A.5040 *et seq.,* that one member of the
three-member arbitration panel be a hospital ad-
ministrator or physician violates a patient's due
process rights. Two recent cases from this Court
addressed this issue and held that that require-
ment does not infringe unconstitutionally upon the
due process right to a hearing before a fair and
impartial tribunal. See Judge CYNAR's opinion in
*Morris v Metriyakool,* 107 Mich App 110; 309
NW2d 910 (1981), and *Brown v Siang,* 107 Mich
App 91; 309 NW2d 575 (1981).

We find the reasoning in *Brown, supra,* to pres-
ent the better view on the issue *sub judice.* Based
upon the reasoning presented there and in *Morris,
supra,* we affirm the trial court's decision.

Affirmed.

R. H. CAMPBELL, J., concurred.

T. M. BURNS, J. *(dissenting).* The instant case
arises out of medical treatment rendered to plain-
tiff's decedent from August, 1975, to December 20,
1977. During this period of time, the decedent was
admitted to the Jackson Osteopathic Hospital on
three separate occasions. Prior to receiving treat-
ments on each of these occasions, he signed arbi-
tration agreements which provided that any
claims or disputes arising out of the services ren-
dered him by the defendant hospital, its employ-
ees, or its staff of independent doctors would be
subject to arbitration. The provisions of these
agreements were those that are required by the R.
Hood-McNeely-Geake Malpractice Arbitration Act
(MAA), MCL 600.5040 *et seq.;* MSA 27A.5040 *et
seq.*

In March, 1979, plaintiff, as administratrix of

the estate of her deceased husband, filed a medical malpractice suit against the defendant doctors and hospital alleging that the defendants' failure to diagnose and treat a carcinoma of the lung condition from which her decedent was suffering caused his eventual death.

Defendants moved for accelerated judgment pursuant to GCR 1963, 116.1(2), on the ground that the court lacked subject matter jurisdiction over this case due to the fact that plaintiff's decedent had signed valid arbitration agreements. In response to this motion, plaintiff raised a number of issues pertaining to the constitutionality of the MAA. Subsequently, the lower court entered orders granting defendants' motion for accelerated judgment and dismissing plaintiff's action. On August 21, 1979, plaintiff filed a demand for arbitration against defendant with the American Arbitration Association, which is being held in abeyance pending this appeal.

Plaintiff now appeals the lower court's orders granting accelerated judgment to defendants.

The dispositive issue raised by plaintiff in this appeal concerns whether the provisions of the MAA which require one member of the three-member arbitration panel to be a hospital administrator or physician violated plaintiff's constitutional right to a hearing before an impartial tribunal.

. I am not persuaded by defendants' claim that the arbitration agreement signed by plaintiff's decedent was a private one that cannot be challenged on due process grounds because it does not have a sufficient nexus to state action.

The arbitration panel created by the statute clearly functions in a judicial capacity because it is an alternative to a jury or bench trial. MCL

500.3053(1); MSA 24.13053(1) forbids malpractice insurers to offer malpractice insurance to any hospital in this state unless the policy requires the hospital to offer patients the option to arbitrate claims. Further, not only is the arbitration procedure established by statute, but also is the composition of the panel. Therefore a sufficient nexus with the state is present.

This follows from cases that have held a due process analysis appropriate where the sole state action in a case was an attempt to enforce in the courts of that state a racially restricted property covenant. See *Barrows v Jackson,* 346 US 249; 73 S Ct 1031; 97 L Ed 1586 (1953). If adequate state action can be found where the only connection with the state is through enforcement of an agreement by the courts, then there is a sufficient nexus in this case where both the court enforcement of the arbitration panel's decision and the legislative determination of the composition of the panel are present.

Also unpersuasive is defendants' claim that due process is not violated by the MAA because a malpractice claim is not a life, liberty, or property interest protected by the Due Process Clause. Defendants contend that this is true because the Legislature has the power to completely extinguish a cause of action or create a new one. While it may be true that the Legislature possesses power to create and abolish causes of action, plaintiff does not claim in this suit that she is being denied her interest in a cause of action. Rather, she claims that the interest at stake in this case is her right of access to a fair and impartial tribunal. This is a right that is within the penumbra of interests protected by the Due Process Clause.

Defendants'. most persuasive argument is that

no deprivation has occurred by the enactment of the MAA because the provisions of this act establish arbitration as an alternative to a trial by court or jury at the option of the patient.

In pertinent part, MCL 600.5042; MSA 27A.5042 provides:

"(1) A person who receives health care in a hospital may execute an agreement to arbitrate a dispute, controversy, or issue arising out of health care or treatment rendered by the hospital. A person receiving emergency health care or treatment may be offered the option to arbitrate but shall be offered the option after the emergency care or treatment is completed.

"(2) The agreement to arbitrate shall provide that its execution is not a prerequisite to health care or treatment.

"(3) The agreement to arbitrate shall provide that the person receiving health care or treatment or his legal representative, but not the hospital, may revoke the agreement within 60 days after discharge from the hospital by notifying the hospital in writing."

As is evident from this section of the MAA, the decision to submit to arbitration and to waive the constitutional right to trial is distinctly a voluntary one on behalf of the person receiving health care treatment.

The arbitration agreement form approved by the Michigan Commissioner of Insurance provides:

"I understand that this hospital and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered) which may arise in the future out of or in connection with health care rendered to me during this hospital stay and/or emergency room visit by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate.

"I understand that Michigan Law gives me the choice

of trial by judge or jury or of arbitration. I understand that arbitration is a procedure by which a panel that is either mutually agreed upon or appointed decides the dispute rather than a judge or jury. I freely choose arbitration, and I agree that a judgment of any circuit court may be rendered upon any award or determination made pursuant to this agreement. I also understand that any arbitration will be conducted in accordance with Michigan Law and the Michigan Medical Arbitration Rules, as approved by the Commissioner of Insurance.

"I understand that this agreement to arbitrate is binding on me and all my agents, representatives and heirs and assigns, as well as on this hospital, its employees and those of its independent staff doctors who have agreed to arbitrate.

"I certify that I have read this agreement or have had it read to me and that I fully understand its content and execute this agreement of my own free will. I have received a complete copy of the booklet which explains this agreement.

"THIS AGREEMENT TO ARBITRATE IS NOT A PREREQUISITE TO HEALTH CARE OR TREATMENT, AND MAY BE REVOKED WITHIN 60 DAYS AFTER DISCHARGE BY NOTIFICATION IN WRITING TO: [THE FACILITY RENDERING CARE]."

Thus, the arbitration agreement does not indicate the composition of the arbitration panel and the fact that it will contain a physician as one of its members.

In order for the waiver of a constitutional right to be effective, the waiver must be an intentional and voluntary relinquishment of a known right. *People v Jaworski,* 387 Mich 21; 194 NW2d 868 (1972), *People v Brewer,* 88 Mich App 756; 279 NW2d 307 (1979). The fact that the person receiving care acknowledges receiving a copy of the booklet which explains the arbitration agreement

does not make this relinquishment of a constitutional right to trial a known, intelligent, or voluntary one, absent evidence that the booklet was read and understood by the patient prior to the time that the arbitration agreement was signed.

Where the law requires a knowing, voluntary, and intelligent waiver of a constitutional right this Court cannot presume that the patient waiving the right has either read the booklet or, if he has, that it was understood. Thus, although the arbitration agreement does state unambiguously that the person signing it is waiving the right to a trial, because that agreement does not make as clear the composition of the arbitration panel, the waiver of a constitutional right to trial cannot be said to be informed or voluntary.

The crucial question relevant to ascertaining whether the MAA violates due process is whether the arbitration panel created by the statute is a fair and impartial one. Michigan appellate courts have considered the composition of an arbitration panel or hearing board as it relates to due process in other contexts.

In *Crampton v Dep't of State,* 395 Mich 347; 235 NW2d 352 (1975), the Supreme Court held that the composition of a license appeal board violated a plaintiff's due process right to a fair and impartial tribunal where the plaintiff was forced to submit his case to a two-member board composed of a representative of the Secretary of State and a police officer from the city where the plaintiff resided. The Court opined that appeal board panels on which a full-time enforcement officer is represented are not sufficiently fair and impartial to judge a law enforcement dispute between a citizen and police officer. See also *Withrow v Larkin,* 421 US 35; 95 S Ct 1456; 43 L Ed 2d 712

(1975), and *Ward v Monroeville,* 409 US 57; 93 S
Ct 80; 34 L Ed 2d 267 (1972).

The *Crampton* Court identified four situations in
which a judge or decision maker is disqualified on
due process grounds from hearing a case without a
showing of actual bias: where the judge (1) has a
pecuniary interest in the outcome of the dispute,
(2) has been a target of personal abuse or criticism
from a party in the case before him, (3) is en-
meshed in other matters involving one of the
parties, or (4) might have prejudged the case be-
cause of prior participation as an accuser, investi-
gator, factfinder, or initial decision maker.

In this case, plaintiff argues that the arbitration
panel created by the MAA violates due process
because one member of that panel is a physician
who has a pecuniary interest in the outcome of
any arbitration matter. In general, a pecuniary
interest in the outcome of litigation has been
sufficient to warrant the finding that a decision
maker cannot be fair or impartial, even absent
proof of actual bias, where the evidence indicates
that the decision maker is in a situation that
would offer great temptation to the decision maker
not to decide the matter in controversy on its
merits. See *Gibson v Berryhill,* 411 US 564; 93 S
Ct 1689; 36 L Ed 2d 488 (1973), *Ward, supra,
Tumey v Ohio,* 273 US 510; 47 S Ct 437; 71 L Ed
749; 50 ALR 1243 (1927).

Defendants argue in this case that the pecuniary
interest that a physician member of the arbitra-
tion panel may be subject to is so speculative and
remote that there is little chance of bias. Indeed,
courts in other states have so held. *Woods v Holy
Cross Hospital,* 591 F2d 1164 (CA 5, 1979), *Parker
v Children's Hospital of Philadelphia,* 483 Pa 106;
394 A2d 932 (1978), *State ex rel Strykowski v*

*Wilkie,* 81 Wis 2d 491; 261 NW2d 434 (1978). However, it would be naive on our part to close our eyes to the fact that the increasing numbers of medical malpractice claims and the attendant spiraling medical malpractice insurance costs will be affected by the manner in which arbitration claims are settled. The relationship between malpractice claims and malpractice insurance is direct and substantial, and plaintiff's proofs include evidence that an individual doctor's insurance rates are dependent upon the total number of malpractice claims and not upon the individual physician's malpractice experience.

Thus, the direct pecuniary interest of a physician-arbitration member in the amount of an award if any, is neither remote nor insubstantial. Further, we should not discount the fact that members of the medical profession are not likely to have neutral feelings on the topic of medical malpractice claims as is evident by the reluctance of physicians to testify in medical malpractice actions. *Halldin v Peterson,* 39 Wis 2d 668; 159 NW2d 738 (1968). See also Spidelson, *Medical Malpractice Cases and the Reluctant Expert,* 16 Cath U L Rev 158 (1966).

In view of the foregoing, I am not inclined to believe that a person receiving health care treatment can knowingly, voluntarily, and intelligently waive his or her right to a trial without being apprised adequately of the nature of the composition of the arbitration panel. Further, because I do not believe that I can sever from the MAA that part of this act that requires one member of the arbitration panel to be a physician, a requirement that violates due process, I would hold that act to be unconstitutional.

My opinion in this matter was written some

months before this Court released its opinions in *Morris v Metriyakool,* 107 Mich App 110; 309 NW2d 910 (1981), and *Brown v Siang,* 107 Mich App 91; 309 NW2d 575 (1981). Thus, I did not have the benefit of reflecting on the wisdom of those opinions when I wrote my own. Nonetheless, I have since reviewed them and, unlike the majority here, I am not persuaded by their logic. Like the majority opinion in this case, those cases do not give sufficient deference to this country's long-cherished right to trial before a jury or the right to have one's case heard before a tribunal that does not have even the slightest semblance of bias.

I would reverse and remand for trial.