MARCINIAK v AMID

Docket No. 87492. Submitted March 9, 1987, at Detroit. Decided
August 3, 1987. Leave to appeal applied for.

Dorothy Marciniak and Fred Marciniak brought an action in the
Wayne Circuit Court against Parviz K. Amid, M.D., Wagdi E.
Credi, M.D., Bruce T. Adelman, M.D., and Sinai Hospital of
Detroit alleging medical malpractice. The trial court, Joseph B.
Sullivan, J., granted the motion of Sinai Hospital to compel
arbitration as to the hospital and its two staff doctors, Drs.
Credi and Adelman. The trial court denied a similar motion
filed by Dr. Amid, an independent staff physician for Sinai
Hospital. Dr. Amid appealed by leave granted.

The Court of Appeals *held:*

1. Dorothy Marciniak was bound by her agreement to arbi-
trate not only claims against the hospital and its staff, but also
claims against independent staff physicians such as Dr. Amid
who had previously agreed to arbitrate.

2. Dr. Amid established the existence of an arbitration agree-
ment conforming to the requirements of the Michigan Malprac-
tice Arbitration Act (MMAA), thereby creating a presumption of
its validity. Dorothy Marciniak did not rebut the presumption.

3. Hospital arbitration agreements like the one here at issue,
a hospital-patient arbitration agreement, simultaneously apply
to independent staff doctors who sign arbitration agreements
with the hospital.

4. Section 5042(5) of the MMAA unambiguously extends the
arbitration agreement between a hospital and patient to partic-
ipating health care providers for procedures they perform in
the hospital.

5. Whether Dorothy Marciniak did or did not know of Dr.
Amid's agreement with the hospital is of no consequence. What
matters is that Dorothy Marciniak freely chose to sign the
hospital-patient arbitration agreement and that the agreement
unambiguously extended to independent staff doctors who, like
Dr. Amid, had agreed to arbitrate.

6. The damages which Dorothy Marciniak seeks from Dr.

REFERENCES
Am Jur 2d, Arbitration and Award §§ 6-10, 17, 20, 26, 31, 41.
Arbitration of medical malpractice claims. 84 ALR3d 375.

Amid involve the same damages as, and are inextricable from, her arbitrable claims.

7. The trial court's denial of Dr. Amid's motion to compel arbitration was clear error.

Reversed.

1. ARBITRATION — MALPRACTICE ARBITRATION ACT.

The Malpractice Arbitration Act applies to the arbitration of a dispute, controversy, or issue arising out of or resulting from injury to, or the death of, a person caused by an error, omission, or negligence in the performance of professional services by a health care provider, hospital, or their agent; the term "health care provider" includes an independent staff physician (MCL 600.5040, subds [1] and [2][b]; MSA 27A.5040, subds [1] and [2][b]).

2. ARBITRATION — APPEAL — ARBITRABLE ISSUES.

A trial court's finding that an issue is or is not arbitrable will be reversed on appeal only if it is clearly erroneous (MCR 2.613[C]).

3. ARBITRATION — MALPRACTICE ARBITRATION ACT — JUDICIAL CONSTRUCTION.

Arbitration clauses should be liberally construed to resolve all doubts in favor of arbitration since the Malpractice Arbitration Act evidences Michigan's strong public policy favoring arbitration (MCL 600.5040 et seq.; MSA 27A.5040 et seq.).

4. ARBITRATION — MALPRACTICE ARBITRATION ACT — HOSPITALS.

The Malpractice Arbitration Act provides that notwithstanding the continuing existence of a health care provider-patient arbitration agreement all surgical and medical procedures performed by a participating health care provider in a hospital shall be covered by the terms and conditions applicable to the arbitration agreement between the patient and the hospital (MCL 600.5042[5]; MSA 27A.5042[5]).

5. ARBITRATION — MALPRACTICE ARBITRATION ACT — BURDEN OF PROOF.

The burden of establishing the existence of an arbitration agreement that conforms to the strict requirements of the Malpractice Arbitration Act rests with the party seeking to enforce the agreement; once prima facie evidence of such an agreement has been presented, the statutory presumption of its validity accrues and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement (MCL 600.5040 et seq.; MSA 27A.5040 et seq.).

6. ARBITRATION — MALPRACTICE ARBITRATION ACT — HOSPITALS.

   The Malpractice Arbitration Act unambiguously extends the
   agreement to arbitrate between a hospital and patient to
   participating health care providers for procedures they perform
   in the hospital (MCL 600.5042[5]; MSA 27A.5042[5]).

7. ARBITRATION — HOSPITALS.

   An arbitration agreement between a hospital and a patient which
   states the patient's free choice of arbitration and her under-
   standing that any future claims arising from her hospital care
   would extend to the hospital, its employees, and those of its
   independent staff doctors and consultants who have agreed to
   arbitrate may be held to apply to the patient's claim arising
   from her hospital care against an independent staff doctor who
   has signed an arbitration agreement with the hospital.

*Robert J. Dinges & Associates* (by *Robert J.
Dinges* and *James R. Murphy*), for plaintiffs.

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pedersen, P.C.* (by *John Patrick O'Leary* and *Rob-
ert G. Kamenec*), for defendant.

Before: CYNAR, P.J., and WEAVER and M. H.
CHERRY,* JJ.

WEAVER, J. Defendant Parviz K. Amid, M.D., an
independent staff physician for defendant Sinai
Hospital of Detroit, appeals by leave granted from
the Wayne Circuit Court's denial of his motion to
compel arbitration. We reverse.

This medical malpractice suit arose out of events
in connection with the removal of a melanoma
from Dorothy Marciniak (hereafter plaintiff). On
September 30, 1980, Dr. Amid performed an exci-
sion in order to remove the melanoma; in Novem-
ber of 1980, Dr. Amid concluded that the melano-
ma's spread also required removal of plaintiff's
lymph nodes. When plaintiff was admitted to Sinai
Hospital on December 3, 1980, she signed a hospi-

* Circuit judge, sitting on the Court of Appeals by assignment.

tal-patient artibration form. The agreement stated in pertinent part:

> I understand that this hospital and I by signing this document agree to arbitrate any claims or disputes (except for disputes over charges for services rendered) which may arise in the future out of or in connection with the health care rendered to me during this hospital stay and/or emergency room visit by this hospital, its employees and those of its independent staff doctors and consultants who have agreed to arbitrate.
>
> . . . I freely choose arbitration. . . .
>
> I understand that this agreement to arbitrate is binding on me . . . , as well as on this hospital, its employees and those of its independent staff doctors, and consultants who have agreed to arbitrate.

Dr. Amid was an independent staff doctor who, unknown to plaintiff, had previously agreed to arbitration.[1] On December 4, 1980, Dr. Amid performed surgery on plaintiff.

On April 1, 1983, plaintiff and her husband filed a complaint against Sinai Hospital, two of the hospital's staff doctors and Dr. Amid, alleging that

---

[1] The arbitration agreement signed by Dr. Amid on August 8, 1977, was entitled "Independent Health Care Provider and Hospital Agreement to Arbitrate in a Hospital, Clinic, Sanitarium, or HMO Setting" and provided in pertinent part:

*Sinai Hospital of Detroit,* the Hospital and *Parviz Amid, M.D.,* the Provider, a member of the Independent Hospital Staff, agree to arbitrate health care disputes which may arise out of or in connection with health care rendered during the course of inpatient, outpatient and/or emergency room care with patients who elect arbitration. . . .

\* \* \*

The Hospital and the Provider understand that this agreement to arbitrate with patients who elect to arbitrate is binding on them and all their agents, representatives, heirs and assigns, and that the patient's agreement to arbitrate is binding on him/her and all his/her agents, representatives, heirs and assigns.

the surgery was unnecessary and resulted in her pain, suffering and subsequent corrective surgery. The trial court granted the motion of Sinai Hospital, pursuant to GCR 1963, 769, now MCR 3.602, to compel arbitration as to the hospital and its two staff doctors, but denied a similar motion filed by Dr. Amid. We granted Dr. Amid's application for leave to appeal.

On appeal, Dr. Amid argues that plaintiff was bound by her agreement to arbitrate not only claims against the hospital and its staff, but also claims against independent staff physicians such as himself who had previously agreed to arbitrate.

We agree. The Michigan Malpractice Arbitration Act (MMAA), MCL 600.5040 *et seq.*; MSA 27A.5040 *et seq.*, applies to

> the arbitration of a dispute, controversy, or issue arising out of or resulting from injury to, or the death of, a person caused by an error, omission, or negligence in the performance of professional services by a health care provider, hospital, or their agent. . . . [MCL 600.5040(1); MSA 27A.5040(1).]

The term "health care provider" includes an independent staff physician. See MCL 600.5040(2)(b); MSA 27A.5040(2)(b). The MMAA describes both an agreement with a hospital and an agreement with a health care provider who is not an employee of the hospital. MCL 600.5042(1); MSA 27A.5042(1); MCL 600.5041(1); MSA 27A.5041(1). The MMAA further provides:

> Notwithstanding the continuing existence of a health care provider-patient arbitration agreement *all surgical and medical procedures performed by a participating health care provider in a hospital shall be covered by the terms and conditions applicable to the agreement between the patient and*

*the hospital.* Post-discharge treatment in the health care provider's office subsequent to discharge from such institution will be governed by the terms of any existing health care provider-patient arbitration agreement. [MCL 600.5042(5); MSA 27A.5042(5).]

A trial court's finding that an issue is or is not arbitrable will be reversed on appeal only if it is clearly erroneous. See MCR 2.613(C); *Ferndale Ed Ass'n v Ferndale School Dist #2,* 67 Mich App 645, 649; 242 NW2d 481 (1976). However, because the MMAA evidences Michigan's strong public policy favoring arbitration, arbitration clauses should be liberally construed to resolve all doubts in favor of arbitration. *DAIIE v Reck,* 90 Mich App 286, 289-290; 282 NW2d 292 (1979), lv den 407 Mich 870 (1979). The burden of establishing the existence of an arbitration agreement that conforms to the strict requirements of the MMAA rests with the party seeking to enforce the agreement; once prima facie evidence of such an agreement has been presented, the statutory presumption of its validity accrues and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167, 173; 405 NW2d 88 (1987).

Here, Dr. Amid established the existence of an arbitration agreement conforming to the requirements of the MMAA, thereby creating a presumption of its validity. Unless plaintiff can rebut this presumption, therefore, the trial court's finding of nonarbitrability was clearly erroneous.

Hospital arbitration agreements like the one here at issue have been held to simultaneously apply to independent staff doctors who sign arbitration agreements with the hospital. *Kukowski v Piskin,* 99 Mich App 1, 4; 297 NW2d 612 (1980), aff'd by an equally divided court 415 Mich 31; 327

NW2d 832 (1982), reh den 417 Mich 1103 (1983).[2] This is because § 5042(5) of the MMAA unambiguously extends the agreement between hospital and patient to participating health care providers for procedures they perform in the hospital. 415 Mich 39 (opinion of COLEMAN, J.). Accord, *Brown v Considine,* 108 Mich App 504, 510; 310 NW2d 441 (1981); *Belobradich v Sarnsethsiri,* 131 Mich App 241, 243-244; 346 NW2d 83 (1983); *Harte v Sinai Hosp of Detroit,* 144 Mich App 659, 664-665; 375 NW2d 782 (1985).

In this case, plaintiff voluntarily signed the agreement. The agreement stated her free choice of arbitration and her understanding that any future claims arising from her hospital care would extend to the hospital, its employees, and "those of its independent staff doctors and consultants who have agreed to arbitrate." Dr. Amid was an independent staff doctor who had signed an agreement with the hospital to arbitrate. Whether plaintiff did or did not know of Dr. Amid's agreement with the hospital is of no consequence. What matters is that plaintiff freely chose to sign the hospital arbitration agreement and that the agreement unambiguously extended to independent staff doctors. *Kukowski, supra,* 99 Mich App 4.

---

[2] We note that the Supreme Court was evenly divided on the issue when affirming the *Kukowski* appellate decision. Justice COLEMAN, joined by Justice RYAN and Chief Justice FITZGERALD, authored the opinion to affirm. Justice KAVANAGH, joined by Justices WILLIAMS and LEVIN, authored the opinion to reverse.

We are not persuaded by the reasoning of the opinion to reverse, since it discounts the clear and unambiguous mandate of the statute to cover all participating hospital health care providers, who have previously agreed to arbitrate, through the agreement between patient and hospital. We believe that the language "Notwithstanding the continuing existence of a health care provider-patient arbitration agreement" does not contemplate the necessity for a prior, separate arbitration agreement between patient and health care provider (independent staff doctor), but simply means that if such an agreement does not exist, then the hospital-patient agreement applies; if it does exist, the hospital-patient agreement prevails.

Plaintiff further argues that the trial court reached the right result in denying Dr. Amid's motion to compel arbitration, because her malpractice claim arose before her entry into the hospital.

This argument is without merit. Plaintiff, in the same suit, has attempted to recover from the hospital and two staff doctors for damages identical to those asserted against Dr. Amid. As such, the damages which plaintiff seeks from Dr. Amid involve the same damages as, and are inextricable from, her arbitrable claims. See *Harte, supra*. at 665.[3] The abitration requirement, as to the hospital and the two staff doctors, does not magically transform one suit for the same damages into two suits for different damages. The recovery which plaintiff seeks arises in connection with her surgery which was performed on December 4, 1980, at Sinai Hospital. She filed her complaint on April 19, 1985, alleging medical malpractice in connection with the operation performed on December 4, 1980, at Sinai Hospital. Therefore her complaint is one arising "in the future out of or in connection with the health care rendered . . . during [her] hospital stay . . . ."

In conclusion, the trial court's denial of Dr. Amid's motion to compel arbitration was clearly erroneous. Plaintiff did not rebut the presumption, established by Dr. Amid, of a valid arbitration agreement conforming to the strict requirements of the MMAA. By voluntarily signing the hospital

---

[3] We recognize that two panels of this Court have concluded differently. *Troy v Leep,* 101 Mich App 425; 300 NW2d 598 (1980); *Miller v Swanson,* 95 Mich App 36; 289 NW2d 875 (1980). In this case, however, we find no ambiguity in the arbitration agreement which plaintiff signed. Plaintiff chose an adequate remedy in arbitration and should not be allowed to breach her agreement in an attempt to recover a higher damage award in the courts.

arbitration agreement, plaintiff unambiguously consented to arbitrate any claims arising from her surgery performed at Sinai Hospital on December 4, 1980, against Dr. Amid, an independent staff doctor. The agreement was binding, and may not be circumvented by an assertion that her malpractice claim arose before her entry into the hospital.

Reversed.